MAR 1 1 2020

# Gang Land News
### Real Stuff about Organized Crime

capeci@ganglandnews.com
Jerry Capeci

```
FILED ____      ____ LODGED
____ RECEIVED    ____ COPY

      MAR 1 1 2020

  CLERK U S DISTRICT COURT
     DISTRICT OF ARIZONA
BY_____ DEPUTY
```

March 9, 2020

CR·20·00096·01·PHX·JJT
(bV DXD)

U.S. Magistrate Judge Deborah Fine
Sandra Day O'Connor U.S. Courthouse
401 W. Washington Street
Phoenix, AZ 85003-2118

### *Re: U.S. v.Frank Capri 20CR96 (JJT)*

Dear Judge Fine,

I am a longtime news reporter and I respectfully submit this letter for the purpose of intervening in the above referenced case in order to assert the public's right of access to the transcripts of the detention hearings of defendant Frank Capri that took place before your honor on February 18 and March 5, 2020, as well as any documents related to them that have been sealed.

Specifically, I petition the Court to treat this application as a claim asserted by an interested party requesting the release to the public of the court filings in that matter, as well as transcripts of the proceedings that took place on both days.

I ask that you treat this letter as a *pro se* motion and list it as such on the court docket sheet.

This petition is made pursuant to the tenets of the common law and First Amendment of the Constitution, and all the relevant statutes and judicial precedents that ensure the public's right of access to all judicial documents in criminal prosecutions in the United States of America.[1]  In this regard, several courts have recognized that a third-party motion to intervene is a procedurally proper device for the purpose of protecting the public right of access to documents filed in a criminal proceeding. *See, e.g., United*

---

[1] In addition to the common law right of access, courts have also found the First Amendment to the United States Constitution to presume a right of the public to inspect and copy judicial records and documents. *See Nixon v. Warner*, 435 U.S. 589, 597 (1978); Va. Dep't of State Police v. *Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004); *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988). Notably, the First Amendment's guarantee of that right is much stronger than the guarantee provided by the common law. *Wash. Post*, 386 F.3d at 575; *see also Press-Enter. Co. v. Super. Ct. of Cal. for the County of Riverside*, 478 U.S. 1, 15 (1986); *Stone*, 855 F.2d at 180.

# Gang Land News
## *Real Stuff about Organized Crime*

capeci@ganglandnews.com
Jerry Capeci

*States v. King*, 140 F.3d 76, 77 (2d Cir. 1998); *United States v. Haller*, 837 F.2d 84, 85 (2d Cir. 1988); *Herald*, 734 F.2d at 96. *In re Application of Herald Co.*, 734 F.2d 93, 96 (2d Cir. 1984).

Since the mid-1970s, I have covered federal court proceedings, as a staff reporter for the New York Post and New York Daily News, as a freelance writer for many publications, and also as an author of several non-fiction books about crime. Since 1996, I have published a weekly online column about organized crime at www.ganglandnews.com.

The arrests of Capri, of Scottsdale, and his mother, Debbie Corvo, of Cave Creek, was announced by the U.S. Attorney's Office on February 5, 2020. They are accused of wire fraud and money laundering charges involving the alleged theft of $64 million from developers and investors in 50 cities, according to the 16-count indictment, and publicly filed documents in the case. It is a national story that has been reported by USA Today as well as other newspapers and television stations in numerous cities across the country.[2] I have written three stories concerning allegations of fraud by defendant Capri, including one that appeared in ganglandnews.com on March 5.

It is well established that except in the most extraordinary cases, namely those that involve national security or safety of witnesses or others, the public and the press have a common law right and a First Amendment right to all materials in criminal proceedings in the nation's federal courts.

The First Amendment guarantees the press and public "a general right of access to court proceedings and court documents unless there are compelling reasons demonstrating why it cannot be observed." *Washington Post v. Robinson*, 935 F.2d 282, 287-88 (D.C. Cir. 1991); *See also In re New York Times Co.*, 828 F.2d, 110,114 (2d Cir. 1987) ("where the first amendment provides a right of access, continued, sealing of documents may be justified only with specific, on-the record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim.")

---

[2] Notably, the motives of the press and public for seeking access to such records is not relevant or dispositive to whether access should be granted, because the party seeking closure bears the burden of demonstrating that the documents submitted to the court should be sealed. *DiRussa v. Dean Witter Reynolds*, Inc., 121 F.3d 818, 820 (2d Cir. 1997); *United States v. Amodeo*, 71 F.3d 1044 (The motive for seeking access is irrelevant when defining the weight accorded the presumption of access).

# Gang Land News
### *Real Stuff about Organized Crime*

capeci@ganglandnews.com
Jerry Capeci

*In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994), the Second Circuit explained that "[i]n most cases, a judge must carefully and skeptically review sealing requests to insure that there really is an extraordinary circumstance or compelling need." And, "where the first amendment provides a right of access, continued sealing of documents may be justified only with specific, on-the record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *In re New York Times Co.*, 828 F2d at 114 (2d Cir. 1987.)

In this case, defendant Capri has been publicly identified as a former New Yorker who was relocated to Arizona after testifying as a cooperating witness in cases involving drug dealers, organized crime figures and the killer of a New York City police officer by this reporter as well as the Arizona Republic newspaper. On information and belief, the defendant and his attorney filed a motion to seal the courtroom on February 18, and again on March 5, because, for one reason or another, they would prefer to keep that information out of the public record. The government did not object to the motion.

There is no information about the sealing of the courtroom contained on the docket sheet that the undersigned reported obtained through ECF today, but the Arizona Republic reported the February 18 sealing of the courtroom in its online and newspapers editions. Upon information and belief, the courtroom was closed for the defendant's scheduled March 5 bail hearing, and when this reporter checked on ECF today, there was no indication on the court docket sheet whether he was detained or released on bail – the absolute minimum information that should be available to the public.

Most importantly, the common law as well the First Amendment both provide the public right to access all judicial documents and exhibits in all criminal cases.[3] The Court cannot seal aspects of a criminal case solely to keep the public from learning embarrassing or even scurrilous information about the defendant or the government that either would rather keep secret, including the fact that the defendant was a government witness in the past, unless they can convince the Court there are extraordinary reasons to do so.

---

[3] These rights include documents related to cooperating witnesses who have received 5K1 letters. Even one of the most notorious cooperating witness in American history, who coincidentally also relocated to Arizona from New York, has not been subject to the sealing privileges that defendant Capri has received. *See USA v. Gotti*, et al, 90-CR-01051, EDNY 1990. Docketed entries include, among other things, Salvatore Gravano's judgment of conviction, the sentencing minutes, and letters seeking leniency for him from the U.S. Attorney's Office.

# Gang Land News

### Real Stuff about Organized Crime

capeci@ganglandnews.com
Jerry Capeci

In this regard, the "'mere fact that judicial records may reveal potentially embarrassing information is not in itself sufficient reason to block public access.'" *United States v. Martorna* 2013 U.S. Dist. LEXIS 182959, 2014 WL 164181, at *5 (quoting *Siedle v. Putnam Invs., Inc.*, 147 F.3d 7, 10 (1st Cir. 1998)). With respect to public officials in particular, "[p]rivacy interests should be trumped when evoked to protect public officials from criticism." *United States v. Huntley*, 943 F. Supp. 2d 383, 387 (E.D.N.Y. 2013) (citing *Garrison v. State of Louisiana*, 379 U.S. 64, 73 n.9, 85 S. Ct. 209, 13 L. Ed. 2d 125 (1964) ("Even the law of privacy . . . recognizes severe limitations where public figures or newsworthy facts are concerned.")).

For all the above reasons, as well as any local rules or judicial precedents that the undersigned reporter is unaware of that the Court may feel is relevant, I respectfully ask that your Honor unseal any sealed filings submitted by the defendant and the government regarding the detention of defendant Capri, as well the transcripts of both proceedings before Your Honor.

I have copied the assistant U.S. attorney and defense attorney in the case.

Sincerely,

Jerry Capeci
cc Monica Edelstein, D. Stephen Wallin